Annie Yvonne HARRIS, a minor, by her father and next friend, Collins W. HARRIS; Anne Ruth Whatley; Jessie Roy Whatley; Willie D. Henderson, Jr., minors by their mother and next friend, Norma Ruth Henderson; Gwenetta Hill, a minor, by her grandmother and next friend, Floreese Mitchell; Myra Ruth McGhee and Windan Ray McGhee, minors, by their father and next friend, Wilbur McGhee; and Willie D. Ridgeway, a minor, by his father and next friend, Jessie Ridgeway, Plaintiffs–Appellants,

National Education Association, Inc., Plaintiff–Intervenor,

v.

CRENSHAW COUNTY BOARD OF EDUCATION; Eugene W. Williams, Steve Landers, Ollie Cannon, Howard Morgan, and James E. Hollis, Jr., as members of the Crenshaw County Board of Education and Joe R. Sport, Superintendent of Education of Crenshaw County, Alabama, Defendants–Appellees.

No. 91–7609.

United States Court of Appeals, Eleventh Circuit.

July 31, 1992.

Solomon S. Seay, Jr., James Eldon Wilson, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., for plaintiffs-appellants.

Nathaniel Douglas, Salliann S.M. Dougherty and Michael S. Maurer, Trial Attorneys, Civil Rights Div., Educational Opportunities Litigation Section, U.S. Dept. of Justice, Marie K. McElderry and Dennis J. Dimsey, U.S. Dept. of Justice, Washington, D.C., for U.S.

David R. Boyd, Balch & Bingham, Montgomery, Ala., Michael E. Jones, Luverne, Ala., for defendants-appellees.

Before KRAVITCH, Circuit Judge, CLARK *, Senior Circuit Judge, and PITTMAN **, Senior District Judge.

CLARK, Senior Circuit Judge:

This is an appeal from a district court order entered as part of that court's continuing jurisdiction over the Crenshaw County, Alabama, school system. The district court's order granted the petition of defendant Crenshaw County Board of Education for approval of the closing of Dozier High School, Crenshaw County's only predominantly black school, and the consolidation of that school with the other schools in the county. The plaintiffs contend that the district court erred in approving the Board's plan because the declining enrollment at Dozier, and particularly the declining enrollment of white students, is a direct and proximate cause of the Board's past violations of its duty to desegregate the Crenshaw County school system. The plaintiffs further contend that the closing of Dozier places a disproportionate burden of desegregation on blacks. We find that the Board has offered compelling justifications for closing Dozier; it has demonstrated that its plan makes the best use of limited educational funds, enhances educational opportunities, and promotes desegregation. We further find that, while the Board has in the past violated its duty to desegregate, it has done everything practicable to reverse the effects of these historical violations and has demonstrated that these historical violations do not justify requiring that Dozier remain open. Finally, we find that the Board's plan does not place a disproportionate burden on blacks. Accordingly, we conclude that the district court did not abuse its discretion in approving the plan, and, therefore, we affirm.

## BACKGROUND

This litigation commenced in August 1966 when Annie Young Harris and other black children in Crenshaw County, Ala-

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

bama, filed suit against the Crenshaw County Board of Education seeking desegregation of the Crenshaw County school system. In 1970, the district court entered a desegregation order that required the Board to implement a plan designed to completely desegregate the school system. This plan divided the Crenshaw County school district into four school attendance zones: the Highland Home zone covered roughly the northern third of the county; the Luverne zone covered roughly the central third of the county; and roughly the southern third of the county was divided into the Dozier zone in the west and the Brantley zone in the east. According to the plan, the projected enrollment for Dozier High School, the only school in the Dozier zone, was 278 students, 117 black and 161 white. The projected enrollment for Brantley High School, the only school in the Brantley zone, was 670 students, 210 black and 460 white.

For several years following entry of the desegregation order, the Crenshaw County school system operated largely without district court intervention. In 1977, the State of Alabama Department of Education approved the construction of a new gymnasium at Dozier High School. In correspondence approving the gymnasium, the State Superintendent of Education noted that Dozier was approved as a "permanent elementary and temporary junior-senior high school center" and that the Dozier site had been classified as suitable for "temporary" use in a survey made by the State Department of Education in 1969.[1] Thus, as early as 1969, the state had designated Dozier as only a "temporary" center. A "temporary" center is one that the Board could continue to operate if the center's enrollment increases to meet state standards; if the enrollment does not increase, the center could be consolidated with another school.

Beginning in approximately 1980, the student populations at both Dozier and Brantley high schools, which are located approximately 10 miles apart, began to steadily and significantly decline. In the 1978–79 school year, Dozier had an enrollment of 304 students, 147 black and 157 white. That same school year, Brantley had an enrollment of 684 students, 207 black and 477 white. By the 1989–90 school year, Dozier's enrollment was down to 188 students, 132 black and 56 white; Brantley's enrollment was down to 530 students, 137 black and 393 white. Thus, by the 1989–90 school year, Dozier had only 68% of the enrollment originally projected in 1970 and an average of fewer than 15 students per grade, and Brantley had only 79% of the enrollment originally projected in 1970 and an average of fewer than 41 students per grade; indeed, the combined enrollments of the Dozier and Brantley attendance zones, which was 718 students, was less than the enrollment in either the Luverne zone, which had 1144 students, or the Highland Home zone, which had 853 students. In addition, Dozier's racial mix had become increasingly dissimilar to the racial mix of the school district as a whole; by the 1989–90 school year, Dozier had 70% black students in a county system that had only 36% black students.

In the fall of 1988, four new school board members were elected to the five-member Board, and a new county superintendent of education took office. By early 1990, this new Board had concluded that Dozier should be closed and consolidated with the other schools in the county, primarily Brantley. The Board based this decision on a number of factors. First, the Board considered educational opportunities, which would be greater at the consolidated school than at either Dozier or Brantley. Second, the Board considered economics. Due to its small enrollment, the Board spends considerably more per student for teacher salaries at Dozier than at any other school in the system.[2] Third, the Board considered student enrollment. State standards call for a minimum enrollment of 490 students for a kindergarten through twelfth grade

---

**1.** Defendant's Trial Exh. 55.

**2.** In the 1989–90 school year, Dozier earned only 6.88 teacher units from the state, but it was actually staffed by 13 teachers. The cost of the unearned 6.12 teacher units must be paid by the county, rather than by the state.

school. Dozier's 1989–90 enrollment of 188 students was only 38% of this state minimum standard. Fourth, the Board considered the effect of the consolidation on desegregation. In the 1989–90 school year, the Crenshaw County school system was 36% black, Dozier was 70% black, Brantley was 26% black, and the combined enrollment of Dozier and Brantley was 37% black. Thus, combining the two schools accomplishes the objective of greater desegregation. Fifth, the Board considered transportation. Under the Board's plan, most current Dozier students would be transported to Brantley. The area surrounding Brantley is more densely populated than that surrounding Dozier. Thus, the plan is in keeping with the general rule that students should be transported from areas of lesser population density to areas of greater population density. The Board also looked at the length of the bus routes necessary to transport Dozier students to Brantley, compared these routes to other routes in the county, and concluded that the routes were not unreasonable.

In reaching its decision, the Board also considered several alternatives to closing Dozier. As the Board was aware, the closing of Dozier, and particularly the transportation necessitated by the closing, would affect black students more than white students because Dozier is predominantly black. Thus, the Board looked at alternatives to reduce what might be considered as a burden on black students. For example, the Board considered altering attendance zone lines to zone more students for Dozier. The Board rejected this alternative because there were not enough students in the southern part of the county to justify two schools; increasing Dozier's enrollment would decrease Brantley's enrollment, which is already marginal. The Board also considered keeping Dozier open as a grade school or middle school for students in the Dozier zone or in the combined Dozier/Brantley area. The Board rejected these alternatives because they required two schools when only one was needed and they involved cross-transportation of students.

In January 1990, the Board filed its petition for approval of the consolidation of Dozier with the other schools in the county. The Board's plan provided that 151 Dozier students, 106 black and 45 white, would attend Brantley, making Brantley 36% black; 18 Dozier students, all black, would attend Highland Home, making Highland Home 32% black; and 40 Dozier students, 26 black and 14 white would attend Luverne, making Luverne 39% black. Thus, the Board's plan increased the percentage of black students at Brantley, thereby resulting in greater desegregation.

The government and the private plaintiffs in this action objected to the Board's proposed closing of Dozier. They contended that the Board was responsible for Dozier becoming the only predominantly black school in the system because the Board had permitted white students residing in the Dozier zone to attend schools outside of the zone. The government and the plaintiffs relied on a 1987 consent decree, pursuant to which the boards of education in Crenshaw and other Alabama counties had agreed not to permit inter-district transfers that impede desegregation.[3] The government and the plaintiffs alleged that the Board had violated this consent decree by permitting white students in the Dozier zone to attend majority white schools in neighboring counties.[4] They also alleged that the Board had granted white students residing in the Dozier zone intra-district transfers to permit them to attend Brantley and other majority white schools within Crenshaw County.

In response to these allegations, the Board undertook during the summer of 1990 a number of measures aimed at stopping all transfers, both inter-district

---

3. *See United States v. Lowndes County Board of Education,* 878 F.2d 1301 (11th Cir.1989).

4. The government and the plaintiffs also alleged that the Board had violated the 1987 consent decree by permitting white students from neighboring counties to attend majority white schools in Crenshaw County. Because these alleged inter-district transfers have no impact upon Dozier, we find it unnecessary to consider them further.

and intra-district, that could have a negative effect on desegregation. First, the Board contacted the boards of education of neighboring Covington and Pike Counties and requested that they cease accepting students residing in Crenshaw County. Second, the Board revised its intra-district transfer policy to permit intra-district transfers only for students in the tenth, eleventh, and twelfth grades who had attended the school outside of their school zone for at least two years and for students with extenuating circumstances, such as health or safety problems. The Board sent individual letters to the parents of each child suspected of attending school outside of his or her zone of residence advising the parents of the revised policy. Third, the Board undertook to locate and substantiate the residence of every child enrolled in the Crenshaw County school system and to identify and rectify all situations in which families were attempting to circumvent the Board's transfer policies. The Board notified the district court of these measures and stated that it would not pursue the petition to close Dozier for the 1990–91 school year, as the Board wanted these measures to take effect prior to the court's consideration of the petition.

Notwithstanding the Board's remedial measures, the student population in the southern third of Crenshaw County continued to decline. Although Dozier's total enrollment increased slightly in the 1990–91 school year, to 197 students from 188 students in the 1989–90 school year, Brantley's total enrollment decreased to 508 students, down from 530 students in the 1989–90 school year. The Board's efforts to stem the exodus of Dozier's white student population by eliminating transfers out of the zone had little or no impact. Dozier's white enrollment in the 1990–91 school year

fell to 44 students, down from 56 students in the 1989–90 school year.

In March 1991, the Board renewed its request to close Dozier and consolidate it with Brantley and the other schools in the county. In support of its decision to move ahead with the consolidation, the Board relied on a State Department of Education report issued in 1990. In this report, the state made the following recommendation as to Dozier High School:

The enrollment of 113 pupils in grades kindergarten through six, 38 pupils in grades seven through nine and 42 pupils in grades ten through twelve does not meet the minimum standards of the State Board of Education for an approved center. The cost per pupil is too great and the course offerings are too limited to justify the continued operation of this school. Therefore, it is recommended that this school be closed at the end of the current school term and these pupils transferred to Brantley High School. No construction should be made on the facilities other than that which is absolutely necessary for the health or safety of the pupils.[5]

Following a bench trial, the district court granted the Board's petition to close Dozier. The plaintiffs appealed,[6] and a panel of this court granted the plaintiffs' motion for a stay of the district court's judgment pending this appeal. Accordingly, Dozier remained open during the 1991–92 school year.[7]

## DISCUSSION

Until a school system achieves unitary status, it has an affirmative duty to eliminate the effects of its prior unconstitu-

5. Defendant's Trial Exh. 56.

6. Although the government opposed the Board's petition before the district court, the government is not a party to this appeal.

7. A report filed by the Board with the district court after that court rendered its decision in this case indicates that the student populations for both Dozier and Brantley reached an all time low during the 1991–92 school year. Dozi-

er had a total enrollment of 165 students, 137 black and 28 white, and Brantley had a total enrollment of 463 students, 130 black and 333 white. Thus, in the 1991–92 school year, Dozier had an average of less than 13 students per grade, and the entire student population of the southern third of Crenshaw County was only 628 students, down 77 students from the 1990–91 school year.

tional conduct.[8] To fulfill this duty, school officials are obligated not only to avoid any official action that has the effect of perpetuating or reestablishing a dual school system, but also to render decisions that further desegregation and help to eliminate the effects of the previous dual school system.[9] Thus, the duty to desegregate is violated if a school board fails to consider or include the objective of desegregation in decisions regarding the construction and abandonment of school facilities.[10] Moreover, when a school board proposes to close a school facility with a predominately minority student body, it must "adduce evidence sufficient to support the conclusion that [its] actions were not in fact motivated by racial reasons."[11] In this case, the plaintiffs raise two arguments in support of their position that the Board has not met this burden of proving that its decision to close Dozier is not racially motivated.[12] We address these arguments separately below.

### 1. *Student Transfers*

■ First, the plaintiffs argue that it is the Board's tacit approval of the transfers of white students out of the Dozier zone that caused Dozier's small student enrollment, particular the small enrollment of white students; thus, the plaintiffs contend that the Board cannot use the declining enrollment and "white flight" to justify closing the school. The Board does not deny that it has in the past, particularly prior to the election of the new Board in the fall of 1988, permitted transfers that had a negative effect on desegregation. It is the Board's position, however, that the impact of its historical violations regarding transfers upon the current enrollment at Dozier is inconsequential insofar as this litigation is concerned. The Board contends that closing Dozier is justified and would be justified even if the transfer violations had not occurred. While we no not condone the Board's historical violations of its duty to desegregate, we find the Board's position persuasive.

The Board's decision to consolidate Dozier with Brantley was unavoidable. The student population in the southern third of Crenshaw County has declined drastically in the last 12 years. In the 1978–79 school year, the combined student population of the Dozier and Brantley zones was 988; by the 1990–91 school year, it was down to 705, less than the student population in either of the other two county attendance zones. The student population in the Dozier zone alone declined by more than 35% during this period; by the 1990–91 school year, Dozier averaged only 15 students per grade. Considering these enrollment figures, the economic strain on the county of operating an under-enrolled school, and the increased educational opportunities of a larger school, the Board's decision to consolidate Dozier with Brantley is not only reasonable, but mandated.

Moreover, the consolidation of Dozier with Brantley will have a significant positive effect on desegregation. Dozier currently has a black student population that is disproportionately high compared to other schools in the county, and Brantley has a black student population that is disproportionately low; combining the two schools will accomplish greater desegregation. Thus, the Board's decision to consolidate Dozier with Brantley is in keeping with its duty to render decisions that further desegregation.[13] Indeed, to fulfill this

**8.** *Green v. County School Board of New Kent County, Virginia,* 391 U.S. 430, 437–38, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716 (1968); *Adams v. Board of Public Education,* 770 F.2d 1562, 1565 (11th Cir.1985).

**9.** *Pitts v. Freeman,* 755 F.2d 1423, 1427 (11th Cir.1985).

**10.** *Id.* at 1427.

**11.** *Arvizu v. Waco Independent School District,* 495 F.2d 499, 505 (5th Cir.1974).

**12.** In addition to the two argument addressed herein, the plaintiffs also argue that the Board has discriminated against Dozier in the allocation of funds for physical facilities and in the assignment of teachers. As this allegation is wholly unsupported by the record and, in fact, is refuted by the evidence offered at trial, we find it unnecessary to address it.

**13.** *See Pitts,* 755 F.2d at 1427.

duty, the Board may be obligated to consolidate Dozier with Brantley. The 1970 desegregation order requires that the Board render decisions regarding school consolidations "in a manner which will prevent the recurrence of the dual school structure...."[14] Consolidating Dozier and Brantley appears to be the only means of preventing "the recurrence of the dual school structure."

Notwithstanding that closing Dozier obviously makes good sense and promotes desegregation, we cannot ignore the plaintiffs' allegations that Dozier's depleted white student population is to some extent attributable to the Board's past violations of its duty to desegregate in permitting white students to transfer out of the Dozier zone. The Supreme Court has made it clear that if a school system's violation of its duty to desegregate has been the cause of a racial imbalance in student attendance, then the condition must be remedied.[15] The school system is obligated to eliminate the "vestiges of past discrimination ... to the extent practicable."[16]

In this case, the new Board elected in the fall of 1988 recognized its obligation to eliminate the "vestiges of past discrimination" and undertook to fulfill this obligation. Specifically, this Board undertook to reverse the effects of its historical violations by halting the transfer of white students out of the Dozier zone. Unfortunately, its efforts have been of little avail; Dozier's white student population, and total student population, has continued its rapid decline. We conclude that the Board has done everything practicable to reverse the effects of its historical violations; its efforts simply have not, and cannot, render Dozier viable.

Moreover, we are convinced that any impermissible transfers of white students out of the Dozier zone has not been the causative factor in rendering Dozier a non-viable school; that is, even if the transfers had not occurred, closing Dozier would still be mandated. We reached this conclusion by considering two hypothetical situations. First, we assumed that Dozier's enrollment decline over the last 12 years had been more in line with that at Brantley. If the impermissible transfers had any effect on Brantley, it was to bring white students into that school; nevertheless, Brantley's white student population has dropped by 21% over the last 12 years, and its total population has dropped by 26%. Had Dozier's enrollment dropped by the same percentage, it would have had an enrollment of 225 students in the 1990–91 school year, which is still less than half the state minimum enrollment of 490. Second, we assumed that the Board could bring every known white student who resides in the Dozier zone but attends a public school outside of the zone back to Dozier High School. The plaintiffs allege that there are approximately 40 white students who reside in the Dozier zone but attend a school outside of the zone. Assuming this figure is accurate, had these 40 students attended Dozier during the 1990–91 school year, it would have brought Dozier's total student population up to 237, which is also less than half the state minimum enrollment standard of 490. Even with these 40 white students, Dozier still would have been 65% black in a school system that is less than 40% black. Thus, even if it were able to reverse all of the current effects of its historical violations regarding student transfers, the Board could not achieve an enrollment at Dozier that is satisfactory from the standpoint either of economics or racial integration.

We do not condone the Board's historical violations in permitting white students to transfer out of the Dozier zone. To now "punish" the Board for these violations by requiring it to keep Dozier open is, however, inappropriate for a number of reasons. First, there is no evidence that the Board's decision to close Dozier is racially motivated. The Board offered compelling

14. R1–1 at ¶ 4.

15. *Freeman v. Pitts,* —— U.S. ——, ——, 112 S.Ct. 1430, 1447, 118 L.Ed.2d 108 (1992).

16. *Board of Education of Oklahoma City Public Schools v. Dowell,* —— U.S. ——, 111 S.Ct. 630, 638, 112 L.Ed.2d 715 (1991).

justifications for its decision, the primary one being under-enrollment and the educational and economic problems arising therefrom. The Board has not continued to operate any predominately white school with a serious enrollment problem like that at Dozier.[17] Second, the Board's decision to close Dozier will have a positive effect on desegregation, while continuing to operate Dozier may result in the recurrence of a dual school system in the southern third of Crenshaw County as Dozier's white student population continues to decline.[18] Third, there are no viable alternatives to closing Dozier. The student population in the southern third of Crenshaw County is not sufficient to support more than one school, and Brantley is the obvious choice for this one school; its student population is more than twice that at Dozier and it lies in an area that is more densely populated than the area around Dozier. Finally, even assuming that requiring that Dozier remain open is an appropriate "punishment" for the Board's past violations, this "punishment" would be at the expense of the children of Crenshaw County. Operating one school in the southern third of Crenshaw County rather than two is clearly in the best interests of these children because it makes the best use of limited educational funds, it enhances educational opportunities, and it promotes desegregation.

### 2. *Burden On Black Students*

█ The plaintiffs' second argument is that closing Dozier places a disproportionate burden on black students. Specifically, the plaintiffs argue that the burden of transportation falls disproportionately on blacks because Dozier students, most of whom must be transported to Brantley under the Board's plan, are predominantly black. The plaintiffs further argue that many of the black students who now attend Dozier are limited resource black children

who live in a public housing facility within two miles of Dozier. Transporting these limited resource black children to Brantley, the plaintiffs argue, will seriously impair or impede their ability to participate in extracurricular activities and will deprive them of the close interpersonal relationships they enjoyed at Dozier.

█ As we have discussed, consolidating Dozier with Brantley will have a significant positive effect on desegregation. To comply with constitutional mandates, the burden of desegregation must be distributed equitably; the burden may not be placed on one racial group.[19] In this case, there is no question that the closing Dozier affects black students more than white students because Dozier's student population is predominantly black. The impact of the closing on black students does not, however, amount to a disproportionate burden. The evidence at trial showed that the majority of the black students living in the public housing facility near Dozier currently ride the bus to school. Transporting these children to Brantley rather than to Dozier, which will add, at most, ten miles to their bus ride, is not unreasonable. Moreover, there is no reasonable alternative to transporting Dozier's students to Brantley. In an effort to avoid placing the burden of transportation on black students, the Board considered using Dozier as a middle school (grades 6th through 8th) for the combined Dozier/Brantley zone, with all other grades attending Brantley. Under this middle school proposal, a total of 244 students would be transported, 137 of whom are black. Under the Board's plan to close Dozier, 191 students would be transported, 148 of whom are black. Thus, although the middle school proposal results in the transportation of 11 fewer black students, it requires the transportation of 52 more students. In addition, the middle school proposal would require cross-transportation of students, which is more complicated and

---

17. *See Arvizu*, 495 F.2d at 505 ("To the extent that other schools which were kept open operate under the same handicaps from which the closed school suffered, the viability of the Board's justifications is diluted commensurately.").

18. *See Adams*, 770 F.2d at 1566 (upholding school board's plan that resulted, among other things, in total integration of the seventh grade).

19. *See Arvizu*, 495 F.2d at 504; *Lee v. Macon County Board of Education*, 448 F.2d 746, 754 (5th Cir.1971).

more expensive than simply transporting Dozier students to Brantley. Furthermore, there are limited resource black children who live in a public housing facility near Brantley just as there are near Dozier; the middle school proposal would place the same burdens on these students who live near Brantley as does the Board's plan to close Dozier on the limited resource black children who live new Dozier. Accordingly, the middle school proposal is not a viable alternative.

There is absolutely no evidence that the Board's decision to transport Dozier students to Brantley was racially motivated; there simply is no other alternative. Accordingly, we find unpersuasive the plaintiffs' argument that the burden of closing Dozier falls disproportionately on black students.

## CONCLUSION

Dozier is critically under-enrolled and is quickly becoming identifiable as a black school. Even if the Board were able to reverse all of the current effects of its historical violations of the duty to desegregate, these problems would persist. The Board's plan to close Dozier would solve these problems by creating a single school in the southern part of Crenshaw County that functions more economically than Dozier, offers more educational opportunities than Dozier, and is more integrated than Dozier. Moreover, there is absolutely no evidence that the Board's decision to close Dozier is racially motivated, and the burden of the closing does not fall disproportionately on blacks. Accordingly, we conclude that the district court did not abuse its discretion in approving the Board's plan to consolidate Dozier with the other schools in the county. The district court's order granting the Board's petition to implement its plan is AFFIRMED. Our court's order of August 7, 1991, staying the district court's judgment pending this appeal is VACATED.

* See Rule 34–2(b), Rules of the U.S. Court of